IN RE ESTATE OF WENCESLAO BORDA. BANKERS TRUST Co. ET AL., Respondents and Appellants-Appellees, *v.* ROSA MORALES ET AL., Appellees-Appellants.

No. 5995. Argued January 10, 1934.—Decided July 24, 1935.

*J. Henri Brown, C. Ruiz Nazario,* and *G. E. González* for respondents-appellants. *R. Cintrón Lastra* and *R. Castro Fernández* for heirs of Mendía.

Mr. JUSTICE WOLF delivered the opinion of the court.

On the 25th of January 1925, on petition of the District Attorney, Manuel Mendía Morales was named judicial administrator of the estate of Wenceslao Borda and on the 20th of May of the same year the said Mendía was named administrator permanently. On acceptance he gave a bond in the sum of $25,000. He continued in the discharge of his duties until the 27th of January 1930, when he was suspended by order of the court. Meanwhile he had rendered accounts for the years 1925, 1926, 1927, and 1928. It was averred that the accounts were lacking in details, but there was no investigation of them until 1930 and then at the instance of the executors of the estate of Borda and their attorney. It was after several preliminary steps that Mendía was suspended, and the court ordered him to turn over to the American Colonial Trust Co. as Judicial Administrator all the books, vouchers, documents or papers belonging to or relating to the estate. Mendía was also ordered to show cause why he should not be permanently removed. Delaying, and after a rule to show cause why he should not be punished for contempt, on the 14th of February 1930, he reported to the court that he had turned over to the American Colonial Trust Co. all that had been ordered, presented his resignation as administrator and asked for time to present his final accounts. The court acceded and on the 14th of May the accounts were presented.

Mendía claimed not only commission for each item actually received but also according to petitioners for future amounts and he claimed a special compensation for extra and extraordinary work. The account was attacked on various grounds. Manuel Mendía died before the hearing of the opposition to his accounts and the court notified his heirs and his sureties of the proposed hearing on the opposition. The court issued its final order or decree on the 29th of

January 1932, ordering the return of $20,081.11 composed of two items, $14,419.21 and $5,661.90, and approved the account. Both sides appealed.

■ The opposition alleged, 1st., that the court erred in holding that $1,566.98 received from the Guardian Assurance Co. were invested into repairs of property belonging to the estate of Borda. Oral evidence was admitted to prove this fact and the court believed it. We are quite agreed with appellant that such payments should be proved to the satisfaction of a jury, 24 C.J. 1020, or here the trier of the facts. We are satisfied that oral evidence may be given, especially in the absence of documentary proof. The hearing revealed that Mendía was careless or even arbitrary in the handling of the estate and we shall have occasion to refer to this hereafter. As appellee remarks the payment by the Guardian Assurance Co. was for damages from a cyclone and the court had a right to infer that the account went for repairs as claimed.

Mendía was a man of very many occupations. He employed in this case his brother, Francisco Mendía, as an accountant and bookkeeper of the estate. The oppositors challenge the sizable amounts allowed the said bookkeeper. They single out various items that Francisco Mendía failed to enter into the books. On the witness stand he admitted that he knew about these various items and yet failed to make due entries, either in the books or in the accounts of the administrator. This showing on the part of the oppositors does not convince us that the court, that heard the whole evidence, was not justified in making the award. The appellees in this regard maintain that the estate involved the handling of three millions of dollars and was administered for several years with Francisco Mendía as accountant, both before and after Manuel Mendía retired and this does not seem sufficiently inaccurate to require a closer investigation. Moreover, it is not Francisco Mendía that is being investigated directly and there is no showing that Manuel Mendía

did not make the payments in good faith or that they were so received as to call for observation by an ordinarily prudent employer.

■ The third assignment of error is as follows:

"The court erred in granting remuneration to the judicial administrator."

Now, the theory of this assignment is that as Manuel Mendía advanced himself moneys as commission from the estate amounting to $17,688.50 when according to the court he was only entitled to $3,269.29; that he made loans to one of the firms in which he was interested without the consent of the court amounting to $5,661.90; and that other amounts received by him were not duly entered in the books, these were reasons why no compensation should be allowed to the administrator.

As we have said, Mendía was a man of greatly varied interests and tremendously occupied and did not keep strict accounts. The expert employed by the oppositors said that it was not a case of fraud or malversation of funds, but of mere irregularities and the court so found.

It would appear in some cases that even where fraud is shown the administrator is not denied compensation, but supposing the opposite rule to prevail we should not feel impelled to reverse the holding of the court that what he did were irregularities rather than frauds.

■ The principal doubt the writter has had in the case is whether the commissions ought not to be increased. The court reviewed the authorities and felt itself bound to follow the tariff set forth in the statutes. The judge in his opinion expressed a certain amount of sympathy with the claim but felt bound to disallow $14,000.

In this regard the law reads as follows: (Act relating to special legal proceedings, section 53, Revised Statutes of 1911, section 1592, page 308).

"Each administrator and executor, unless the will under which he is appointed provides to the contrary, shall be entitled to be

paid from the estate, as compensation for his services, five per centum on sums received in the course of administration, amounting to one thousand dollars or under; two and one-half per centum on sums up to ten thousand dollars, and one per centum on sums above ten thousand dollars. The judge shall also allow an administrator or executor the necessary and proper expenses incurred in administration, including cost of advertising and publishing notices required by law, maintenance and care of the property, legal councils and traveling expenses.''

The writer is inclined to think that a greater amount of compensation might perhaps have been given in this case because of the extraordinary and unusual work done by Mendía, and is also inclined to think that the act relating to special legal proceedings, *supra,* is not a case of *expressio unius est exclusio alterius.*

The majority of the court, however, without necessarily deciding that extra compensation is not allowable in Puerto Rico, in any event is of the opinion that no extra compensation should be awarded. The careless manner in which Mendía conducted the affairs of the estate, his arbitrary disposition of the funds thereof, both to himself and to a firm in which he was interested, and the extra compensation given to his brother, are all considerations which would or should impede the allowance of an extra compensation to the said Mendía or to his heirs or sureties and from this conclusion the writer is not prepared to dissent.

The order appealed from will be affirmed.

Mr. Justice Córdova Dávila took no part in the decision of this case.